UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| UNITED STATES OF AMERICA, | § | |
|---|---|---|
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CRIMINAL ACTION NO. |
| | § | 3:17-CR-0450-B |
| TAMMY BOULYAPHONH and | § | |
| KHAMLOR BOULYAPHONH, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION ORDER

Before the Court is Defendants' Motion for Reconsideration of Magistrate Judge's Order Regarding Conflict. Doc. 33. In it, Defendants Tammy and Khamlor Boulyaphonh move this Court to vacate Magistrate Judge Paul Stickney's Order disqualifying their attorney, John Teakell (Teakell), from representing them in this case due to a conflict of interest. After a hearing held on December 11, 2017, the Court **DENIES** the Defendants' motion.

I.

By way of background,[1] in August 2017, Defendants Tammy Boulyaphonh (Tammy) and Khamlor Boulyaphonh (Khamlor), husband and wife, were charged by indictment with conspiracy to defraud the United States (18 U.S.C. § 371) and making false statements on income tax returns (26 U.S.C. § 7206(1)). At the time of their indictment, attorney Teakell had been jointly

---

[1]The background facts are drawn from the record in this case, including the hearing before this Court, the briefing by the parties and the transcript of the October 19, 2017, *Garcia* hearing before Magistrate Judge Stickney. The events are mostly undisputed. But where there is a factual dispute the Court has so noted.

representing the Boulyaphonhs for approximately two years in connection with a federal healthcare fraud investigation.[2] During this roughly two-year period leading up to the tax fraud indictment, Teakell communicated with the Boulyaphonhs as well as with federal prosecutors and investigators regarding the healthcare fraud investigation. Doc. 25, Govt's Mot. for Inquiry Into Joint Rep., 2.

After their August 2017 tax fraud indictment, the Boulyaphonhs hired Teakell to represent Tammy. Doc. 35, *Garcia* Hr'g Tr., at 12.[3] Shortly thereafter, the Boulyaphonhs asked Teakell to represent both of them. *Id*. Teakell agreed and, as the Boulyaphonhs' shared counsel, discussed the facts of the case with them as well as their defenses to the charges. *Id.* at 12–13. On September 6, 2017, at the couple's initial appearance on the tax fraud indictment, Teakell appeared on behalf of both Tammy and Khamlor. *See* Docs. 6, 7, 10. After a discussion between the presiding magistrate judge and Khamlor about Teakell's potential conflict of interest in jointly representing the couple, the magistrate judge appointed an attorney from the Federal Public Defender's office (FPD) to represent Khamlor.[4] Doc. 10. Teakell remained on the case as Tammy's retained counsel. Doc. 7.

---

[2] Teakell told the Court about his two-year attorney-client relationship with the Boulyaphonhs in connection with the healthcare fraud investigation at the December 11, 2017 hearing. Teakell also addressed this relationship with the Boulyaphonhs in his response to the Government's motion for a hearing on the conflict issue. Doc. 28, Defs.' Resp. to Govt's. Mot., 2

[3] "*Garcia* Hr'g. Tr." denotes the transcript of the October 19, 2017, *Garcia* hearing before Magistrate Judge Stickney. "If a defendant chooses to proceed with representation by counsel who has a conflict of interest, a district court must conduct what is commonly known as a "*Garcia* hearing" to ensure a valid waiver by the defendant of his Sixth Amendment right." *United States v. Garcia-Jasso*, 472 F.3d 239, 243 (5th Cir. 2006) (citing *United States v. Garcia*, 517 F.2d 272, 278 (5th Cir. 1975), *abrogated on other grounds by Flanagan v. United States*, 465 U.S. 259, 263 & n. 2 (1984)).

[4] The Government and Teakell differ in their versions of what occurred during the magistrate judge's discussions with Khamlor about the conflict issue at the initial appearance. The Government claims that Khamlor failed to waive Teakell's potential conflict of interest and, consequently, that the magistrate judge appointed the FPD. Doc. 25, Govt's Mot. for Inquiry Into Joint Rep., 3. Teakell, on the other hand, claims that Khamlor did waive all conflicts and potential conflicts as to Teakell at his initial

On September 28, 2017, Teakell moved to substitute as Khamlor's counsel. Doc. 22. This Court initially granted the motion to substitute, effectively clearing the way for Teakell to represent both Tammy and Khamlor. Doc. 24. But the Government, noting its concern about Teakell's potential conflict of interest, filed an unopposed motion for a *Garcia* hearing. Doc. 25, Govt's Mot. for Inquiry Into Joint Rep. The Court, in turn, vacated its order granting Teakell's motion to substitute as counsel for Khamlor and referred the motion to substitute counsel as well as the Government's motion for a *Garcia* hearing to Magistrate Judge Stickney for resolution pursuant to 28 U.S.C. § 636(b)(1)(A). Docs. 26, 29. After the referral, but before Judge Stickney's hearing, Teakell responded to the Government's motion for a *Garcia* hearing, arguing, *inter alia*, that both Boulyaphonhs had already waived all conflicts as to his representation. Doc. 28, Defs.' Resp. to Govt's. Mot., 2. In support, Teakell attached purported waivers by each Defendant in the form of "letter agreements." Docs. 28-1, 28-2.

On October 19, 2017, Magistrate Judge Stickney held the *Garcia* hearing. During the hearing, under questioning by the court, Tammy waived Teakell's conflict. Doc. 35, *Garcia* Hr'g Tr., 9. But Khamlor, who was being assisted by a Laotian interpreter and speaking in broken English, appeared confused and expressed uncertainty about whether to waive the conflict. *Id.* at 9–12. When asked by Magistrate Judge Stickney whether he "wish[ed] to waive any conflicts of interest," Khamlor responded: "I cannot make my decision and I don't know what to do." *Id.* at 10. After some back and forth, Magistrate Judge Stickney observed "[w]hat I hear today is that Mr. Boulyaphonh is saying

---

appearance. Doc. 28, Defs.' Resp. to Govt's. Mot., 2. In any event, there appears to be no dispute that Teakell appeared on behalf of both Defendants but was prevented from representing Khamlor after the magistrate judge questioned Khamlor about conflicts and then appointed the FPD.

that he doesn't waive the conflicts. He's following my admonishment and he says now that if I think that he should have separate counsel, that's what he wants to do." *Id.* at 13. To which Teakell responded, "[w]ell, I'm hearing that too, in some of the responses." *Id.* Teakell then reminded the court that he had submitted signed waivers by the Boulyaphonhs when he filed his response to the Government's motion for a *Garcia* hearing. *Id.* at 12–13. And Magistrate Judge Stickney responded: "I did see . . . [the waivers]." *Id.* at 12. Next, Magistrate Judge Stickney asked Teakell if he had talked to both of the Boulyaphonhs about the facts of the tax-fraud case to which Teakell responded "I have, Your Honor." *Id.* at 13. Once Judge Stickney determined that Teakell had spoken to both of the Boulyaphonhs about the facts of the tax-fraud case, he told Teakell that he was "off both the cases" because Teakell had "talked to both of them and . . . [had] information on both cases." *Id.*

Following the *Garcia* hearing, on November 2, 2017, Magistrate Judge Stickney entered an order disqualifying Teakell from representing Tammy and Khamlor either individually or jointly, due to a conflict of interest. Doc. 32, Order 1–2. His order stated, in relevant part:

> The Court questioned both Mr. and Mrs. Boulyaphonh about the potential of a conflict of interest by their attorney, Mr. Teakell, and advised each of the harms and dangers of being represented by an attorney who may have a potential conflict of interest. . . . After inquiry of the Defendants, and after considering the arguments of counsel, this Court finds there is a conflict of interest present that would cause Mr. Teakell to be unable to represent either Mr. Khamlor Boulyaphonh and Ms. Tammy Boulyaphonh. While [Tammy] waived any conflict of interest, Mr. Boulyaphonh did not make such a waiver. Without such a waiver, Mr. Teakell will not be able to properly provide conflict free representation . . . . As a result this Court finds a conflict of interest does exist for Mr. Teakell to represent either Mr. or Mrs. Boulyaphonh as he has now had conversations with them both. In an abundance of caution and to preserve each of the defendants' right to be represented by conflict free representation this Court finds that new counsel should be retained or appointed by both defendants in this matter.

Doc. 32, Order 1–2.

Teakell now moves the Court to reconsider Magistrate Judge Stickney's order. Doc. 33; Defs.' Mot. for Recons. of Mag. J.'s Order. The Court held a hearing on Teakell's motion for reconsideration on December 11, 2017.

II.

A district court judge may reconsider a magistrate judge's pretrial order if it is "clearly erroneous or contrary to law." 28 U.S.C.. § 636(b)(1)(A). Under this highly deferential standard, the district court judge must affirm the magistrate judge's decision unless "on the entire evidence [the district court] is left with a definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). In practice, this review standard has been explained as follows:

> The clearly erroneous standard applies to the factual components of the magistrate judge's decision. The district court may not disturb a factual finding of the magistrate judge unless, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. If a magistrate judge's account of the evidence is plausible in light of the record viewed in its entirety, a district judge may not reverse it. The legal conclusions of the magistrate judge are reviewable de novo, and the district judge reverses if the magistrate judge erred in some respect in his legal conclusions. The abuse of discretion standard governs review of that vast area of choice that remains to the magistrate judge who has properly applied the law to fact findings that are not clearly erroneous.

*Arters v. Univision Radio Broad. TX, L.P.*, No. CIV.A.3:07CV0957-D, 2009 WL 1313285, at *2 (N.D. Tex. May 12, 2009) (internal quotation marks, citations, and alterations omitted).

"A conflict of interest exists when defense counsel places himself in a position conducive to divided loyalties. This question is highly fact-sensitive." *United States v. Infante*, 404 F.3d 376, 392 (5th Cir. 2005) (internal quotation marks, alterations, and citations omitted). The court may

disqualify counsel if the conflict of interest is actual or potential. *United States v. Jena*, 478 F. App'x. 99, 103 (5th Cir. 2012).

There is a presumption in favor of a defendant's choice of counsel. *Wheat v. United States*, 486 U.S. 153, 163 (1988). Even where a conflict of interest exists, a defendant may waive the conflict but "that right is not unlimited." *Jena*, 478 F. App'x at 103. Instead, a district court has "substantial latitude to refuse such waivers in cases of either actual or potential conflict." *United States v. Sanchez Guerrero*, 546 F.3d 328, 332 (5th Cir. 2008) (internal quotation marks and citation omitted).

III.

With these standards in mind, the Court reviews Magistrate Judge Stickney's order. Reduced to its essence, the decision to disqualify Teakell from representing the Boulyaphonhs rests on three basic conclusions by the magistrate judge. First, the magistrate judge assumed that Teakell's joint representation of the Boulyaphonhs presented a potential conflict of interest that required valid waivers by both of them. Second, he concluded, that during the *Garcia* hearing, Khamlor failed to waive Teakell's potential conflict. And, third, he determined that, because Khamlor failed to waive Teakell's potential conflict and because Teakell had already discussed the facts of this case with both Boulyaphonhs as their joint counsel, Teakell had a conflict of interest and was thereby precluded from representing either or both of the Boulyaphonhs. Having reviewed the entire record, the Court finds that Magistrate Judge Stickney's order and the conclusions supporting it are not clearly erroneous or contrary to law for the reasons that follow.

Turning first to Magistrate Judge Stickney's conclusion that Teakell faced a potential conflict in jointly representing the Boulyaphonhs, this conclusion is neither clearly erroneous nor contrary to law. For starters, there really is no dispute, nor could there be, that Teakell's joint representation

of the Boulyaphonhs presented a potential conflict of interest for him. In fact, federal courts have a legally imposed duty in precisely such cases to engage in a prompt inquiry to ensure that the jointly represented defendants understand their right to effective assistance of counsel, including separate representation—all in a effort to protect each defendant's right to counsel. Fed. R. Crim. P. 44(c)(2); *United States v. Salado*, 339 F.3d 285, 288–89 (5th Cir. 2003). The prompt-inquiry requirement is not satisfied by a cursory discussion. To the contrary, in carrying out its responsibilities under Rule 44(c)(2), the court must *personally* advise each defendant about the dangers of joint representation, to detail any foreseeable conflicts and then to elicit a response form each defendant to make sure that make sure that they understand the "details of the attorney's potential conflict of interest and the potential perils of such a conflict." *Salado,* 339 F.3d at 289 (quoting *United States v. Newell*, 315 F.3d 510, 520 (5th Cir. 2001)). So important is this inquiry by the court that its duty in this regard has been described as a "continuing one" "because of the potential for later developments suggesting a potential conflict of interest." *Id.* at 290 (quoting *Newell*, 315 F.3d at 523)

Here, faced with an undeniable potential conflict, the record reflects that Magistrate Judge Stickney carefully fulfilled his responsibility under Rule 44(c)(2) by advising the Boulyaphonhs of their rights to effective assistance of counsel, to separate counsel and of the inherent dangers of a conflict of interest in cases of joint representation. Doc. 35, *Garcia* Hr'g Tr., 3–9. After ensuring that each Defendant understood their rights as well as the pitfalls of joint representation, Magistrate Judge Stickney then asked each Defendant whether they were willing to waive Teakell's potential conflict. *Id.* at 7–12. In sum, Magistrate Judge Stickney was correct in his assessment that Teakell faced a potential conflict of interest and then correctly fulfilled his responsibilities under Rule 44(c)(2). Accordingly, his first conclusion, that Teakell had a potential conflict in jointly representing Tammy

and Khamlor, is not clearly erroneous or contrary to law.

The magistrate judge's second conclusion, that Khalmlor failed to waive Teakell's conflict during the *Garcia* hearing, is likewise not clearly erroneous nor contrary to law. That Khamlor was, at best, ambivalent about whether to waive the conflict is clear from the plain record of the *Garcia* hearing. In fact, the transcript of that hearing leaves little doubt that Khamlor, appearing confused and uncertain under questioning by the court, simply never waived Teakell's conflict. As recounted above, when asked by the magistrate judge whether he would waive Teakell's conflict of interest, Khamlour stated: "I cannot make my decision and I don't know what to do." Doc. 35, *Garcia* Hr'g Tr., 10. Teakell himself conceded Khamlor's failure to waive the conflict at the hearing. *Id.* at 15.[5] Nonetheless, Teakell insists that the written waivers, purportedly signed by the Boulyaphonhs and submitted with Teakell's response to the Government's motion for a Garcia hearing,[6] and with his motion for reconsideration,[7] prove that both Boulyaphonhs waived his conflict of interest. The Court

---

[5] Somewhat troubling is Teakell's description in his motion for reconsideration of Khamlor's reasons for failing to waive the conflict during the *Garcia* hearing. Despite Teakell's concession at the hearing that Khamlor was refusing to waive the conflict, Teakell states in his motion for reconsideration: "At the hearing before Magistrate Judge Stickney, the Magistrate Judge told the Defendants that it is always better for defendants to have separate counsel. *Based upon that statement*, Khamlor Boulyaphonh, stated that whatever the Court wanted, or words to that effect." Doc. 33, Defs.' Mot. for Recons. of Mag. J.'s Order, 2 (emphasis added). In this Court's view, this is not a reasonable interpretation of the record of the hearing. Khamlor's equivocation is replete throughout much of the transcript of the hearing and his failure to waive does not appear in any sense to be based on the foregoing comments by Magistrate Judge Stickney. Doc. 35, *Garcia* Hr'g Tr., 6–12.

[6] Docs. 28-1, 28-2 (Letter Agreements).

[7] Doc. 34, Aff. of Khamlor Boulyaphonh (Khamlor's Affidavit). With regard to Khamlor's Affidavit submitted by Teakell to this Court in connection with his motion for reconsideration, Doc. 34, the Court concludes it is irrelevant to deciding whether Magistrate Judge Stickney's ruling was clearly erroneous given that it was not submitted until after the *Garcia* hearing. In any event, even if this Court did consider it, it does not alter the Court's opinion that Magistrate Judge Stickney's ruling that Khamlor failed to waive the conflict was correct.

is not persuaded. The transcript from the *Garcia* hearing demonstrates that Magistrate Judge Stickney was aware of but disregarded the letter agreement waivers after observing Khamlor's in-court demeanor and statements. *Id.* at 12–13. Magistrate Judge Stickney's decision to place more evidentiary weight on Khamlor's in-court statements and demeanor than on the written letter agreements, which were prepared before the hearing by Teakell, was not clearly erroneous or contrary to law. And his decision is fully supported by the record evidence. Moreover, Magistrate Judge Stickney was under no obligation to accept Khamlor's purported signed waiver because courts have "substantial latitude in refusing waivers of conflicts of interest not only if an actual conflict is demonstrated, but in cases where a potential for conflict exists which may result in an actual conflict as the trial progresses." *United States v. Vasquez*, 995 F.2d 40, 42 (5th Cir. 1993). In choosing to credit Khamlor's in-court oral statements over the written alternative supplied by Teakell, Magistrate Judge Stickney was well within the "substantial latitude" accorded courts in these circumstances. For these reasons, his second conclusion will not be disturbed.

Magistrate Judge Stickney's final conclusion that Teakell was precluded from representing either or both of the Boulyaphonhs in this case due to conflict, is also not clearly erroneous or contrary to law. His decision rested partly on his correct conclusion, addressed above, that Khamlor failed to waive Teakell's potential conflict of interest at the *Garcia* hearing which, in turn, precluded Teakell from jointly representing the couple. Doc. 32, Order, 1–2. From there, the magistrate judge deduced that, because Teakell (as he conceded at the *Garcia* hearing) had spoken to both Boulyaphonhs about the facts of this case in his capacity as their joint counsel, that he was foreclosed from representing either of them individually. *Id.* at 2; Doc. 35, *Garcia* Hr'g Tr., 12–13. Again, the magistrate judge—concerned that Teakell's attorney-client communications with the Boulyaphonhs

presented a potential for conflict even if Teakell only remained on Tammy's case—operated well within his discretion in disqualifying Teakell from this case.

Relevant factors in deciding whether counsel has a disqualifying conflict include: "whether the attorney has confidential information that is helpful to one client but harmful to another; whether and how closely the subject matter of the multiple representation is related; how close in time the multiple representations are related; and whether the prior representation has been unambiguously terminated." *Infante*, 404 F.3d at 392. "A conflict of interest may 'prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another.'" *Sanchez-Guerrero*, 546 F.3d at 333–34 (quoting *Holloway v. Arkansas*, 435 U.S. 475, 490 (1978)). Conflicts can also stymie an attorney from "exploring possible plea negotiations and the possibility of an agreement to testify for the prosecution . . ." *Holloway,* 435 U.S. at 490.

As discussed above, at the time the magistrate judge disqualified him, Teakell had not only spoken with the Boulyaphonhs about the facts of this case and their legal defenses, he had been jointly representing the couple for roughly two years in the federal healthcare fraud investigation. Doc. 28, Defs.' Resp. to Govt's. Mot., 2. As their shared counsel, Teakell had discussed the healthcare fraud investigation with the Boulyaphonhs as well as with prosecutors and investigators involved in the case. Doc. 25, Govt's Mot. for Inquiry Into Joint Rep., 2. The Government states that the healthcare fraud investigation is related to the Boulyaphonh's pending tax fraud indictment.[8] In

---

[8]This information is contained in the Government's motion for a hearing on the conflict issue and was reiterated by the Government on the record at the December 11, 2017 hearing before this Court.

fact, the Government maintains that charges arising from the healthcare fraud investigation may be included in a superseding indictment in this case.[9] The Government also points out that the tax fraud indictment alleges that the Boulyaphonhs carried out different roles in the alleged tax fraud. *Id.* at 5.

The fact that Teakell was privy to attorney-client communications with both Boulyaphonhs in the tax fraud case and related two-year health care fraud investigation certainly raises the potential for "divided loyalties" on Teakell's part should he remain on this case for one or both of the Defendants. For example, the fact that the couple played different roles in the conspiracy creates the potential that Teakell, armed with confidential attorney-client information about both spouse's defenses, could either use privileged information against the non-represented spouse or refuse to use it because it was gained confidentially which, in turn, would operate detrimentally to the defense of the spouse he represents. Teakell's long-term attorney-client relationship with the couple could also conceivably affect the effectiveness of his representation of one spouse during cross-examination, plea negotiations and at sentencing.

Teakell vehemently opposes his disqualification from representing at least one of the Boulyaphonhs.[10] Essentially, his objections boil down to his continued insistence that the Boulyaphonhs have waived the conflict, that their non-inculpatory defenses are identical and that,

---

Doc. 25, Govt's Mot. for Inquiry Into Joint Rep., 2.

[9] This information was also stated on the record at the December 11, 2017 hearing by the Government.

[10] He obviously also opposes his disqualification from jointly representing the Boulyaphonhs. But, as stated, he has failed to overcome the Magistrate Judge's well-founded conclusion that Khamlor failed to waive the conflict, so the Court will not further address his objections to the being disqualified from jointly representing the couple.

due to the lack of discovery in the case, that Teakell has not discussed the details of the case with the couple. Doc. 33, Defs.' Mot. for Recons. of Mag. J.'s Order, 2–7. While Teakell is correct that Tammy waived the conflict during the *Garcia* hearing and appears to have also done so in written documents Teakell submitted with the Court, that alone does not entitle him to represent her. A court may reject a waiver "when the overall circumstances of a case suggest a conflict of interest may develop." *United States v. Izydore,* 167 F.3d 213, 221 (5th Cir. 1999). Here, as stated above, given Teakell's long-term attorney client relationship with the couple in the health care fraud case and the (according to the Government) related tax-fraud case, Teakell's representation of even one of the spouses is fraught with potential conflicts. Teakell's argument that he has not received sufficient discovery to be privy to detailed information outside the indictment in this case and that, in any event, the spouses' defenses are non-inculpatory, rings hollow in the face of the "overall circumstances" here strongly suggesting that a conflict will develop.

For all of these reasons, the Court finds that Magistrate Judge Stickney's conclusion that Teakell is disqualified from representing one or both of the Boulyaphonhs is not clearly erroneous or contrary to law.

IV.

For the foregoing reasons, Defendants' Motion for Reconsideration of Magistrate Judge's Order Regarding Conflict, Doc. 33, is **DENIED**.

**SO ORDERED.**

**JANUARY 2, 2018.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE